UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| WILLIAM J. SCHEIB, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:09-CV-416 |
| | ) | | (VARLAN/SHIRLEY) |
| RETIREMENT PROGRAM PLAN FOR | ) | | |
| EMPLOYEES OF CERTAIN EMPLOYERS | ) | | |
| AT THE U.S. DEPARTMENT OF ENERGY | ) | | |
| FACILITIES AT OAK RIDGE, TENNESSEE, | ) | | |
| BABCOCK AND WILCOX TECHNICAL | ) | | |
| SERVICES Y-12 LLC, | ) | | |
| MAUREEN WILLIAMS, in her capacity as | ) | | |
| PLAN ADMINISTRATOR, and | ) | | |
| THE ADMINISTRATIVE COMMITTEE | ) | | |
| OF THE RETIREMENT PROGRAM PLAN | ) | | |
| FOR CERTAIN EMPLOYERS AT THE U.S. | ) | | |
| DEPARTMENT OF ENERGY FACILITIES | ) | | |
| AT OAK RIDGE, TENNESSEE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

# **MEMORANDUM OPINION**

This civil action is before the Court on plaintiff's Motion for Judgment on the ERISA Administrative Record [Doc. 9] and defendants' Joint Motion for Judgment on the Administrative Record [Doc. 13]. Plaintiff has filed a reply brief in support of his motion for judgment on the administrative record [Doc. 20].

These motions are now ripe for the Court's consideration.

**I. Standard of Review**

This is an ERISA case. "[T]he summary judgment procedures set forth in [Federal] Rule [of Civil Procedure] 56 are inapposite to ERISA actions and thus should not be utilized in their disposition." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring); *see also Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x 304, 306 (6th Cir. 2006) ("Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits . . . because the district court is limited to the evidence before the plan administrator at the time of its decision . . . ."). In resolving these cases, a district court should instead employ the following steps in adjudicating an ERISA action:

1. As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2. The district court may consider evidence outside the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

*Wilkins*, 150 F.3d at 619 (Gilman, J., concurring).[1]

---

[1] In *Wilkins*, the Sixth Circuit affirmed the district court's grant of summary judgment in favor of the defendants. *Wilkins*, 150 F.3d at 611. Judges Gilman and Ryan concurred in the result, but wrote separately to explain their misgivings about the application of either a bench trial standard or a summary judgment standard to resolve ERISA actions. *Id.* at 618-19 (Gilman, J., concurring). Their "suggested guidelines" for resolving these actions, reproduced above, thus represent the appropriate standard in the Sixth Circuit for adjudicating an ERISA case.

"Under *Wilkins*, this Court has two possible standards of review." *Gibson v. Prudential Ins. Co. of Am.*, 513 F. Supp. 2d 950, 956 (E.D. Tenn. 2007). "If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the plan in question, a court is required to undertake a *de novo* review of the administrators' decision." *Id.* "[W]here a benefits plan vests discretion with the administrators, a court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious." *Id.*

The benefits plan in this case vests discretion with the plan administrator to make decisions regarding claims for benefits under the Plan. In particular, Section 15.4(d) of the Plan provides that:

> The Plan Administrator shall have exclusive and final responsibility and complete discretionary authority to control the operations, management and administration of this Plan (except Plan investments), with all powers necessary to enable it properly to carry out such responsibilities, including (but not limited to) the power to construe this Plan, to determine eligibility for benefits, and to resolve all interpretative, equitable or other questions that arise under the Plan. The decisions of the Plan Administrator on all matters within the scope of its authority shall be final and binding.

[Doc. 9-1, p. 63]. Thus, the Court may only disturb defendant's benefits determination in this case if it finds the basis of the determination to be arbitrary and capricious.[2] "Under [this] standard, [the Court] will uphold the administrator's decision if it is the result of a

---

[2] Plaintiff acknowledges that "the Plan does contain a putative grant of discretion," but contends that the Court must nevertheless "determine whether this language constitutes 'a clear grant of discretion to the administrator to determine benefits or interpret the plan'" [Doc. 10 (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998))]. The Court finds that Section 15.4(d) provides such a "clear grant of discretion."

3

deliberate, principled reasoning process and if it supported by substantial evidence." *Glenn v. Met. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Fund*, 929 F.2d 1140, 1144 (6th Cir. 1991)); *see also Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (noting that the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by [a] participant[].").

## II. Findings of Fact

Plaintiff William Scheib was at one time an employee of K-25 and Y-12 [Doc. 1, ¶ 8].[3] While employed with K-25 and Y-12, plaintiff participated in defendant Retirement Program Plan for Employees of Certain Employers at the U.S. Department of Energy Facilities at Oak Ridge, Tennessee (the "Plan"), an "employee pension benefit plan" under ERISA [*Id.*, ¶¶ 1, 9]. The Plan provides retirement benefits to eligible participants and beneficiaries [Doc. 6, ¶ 8]. Defendant Babcock and Wilcox Technical Services Y-12 LLC ("B&W Y-12") is the Plan sponsor [Doc. 17]. Pursuant to the terms of the Plan, B&W Y-12 appointed Maureen Williams as the plan administrator [Doc. 1, ¶ 7], and established the Administrative Committee [Doc. 6, ¶ 7]. Ms. Williams is charged with making fiduciary decisions regarding benefits claimed under the Plan [*Id.*, ¶ 7]. These decisions may be appealed to the Administrative Committee, which makes the final benefits determination

---

[3] K-25 and Y-12 are nuclear power facilities located in Oak Ridge, Tennessee. Y-12 National Security Complex, http://www.y12.doe.gov; Department of Energy, Manhattan Project Signature Facilities, http://www.engergy.gov/about/signaturefacilities.htm.

[*Id.*]. Both Ms. Williams and the Administrative Committee are named as defendants in this action.

On or about July 29, 2008, plaintiff requested that his Plan balance be rolled over into a qualified Individual Retirement Account (an "IRA") [Doc. 1, ¶ 10]. On August 21, 2008, plaintiff received an email from Ms. Williams explaining that the Plan did not permit the rollover plaintiff was seeking, and that plaintiff would therefore not be permitted to roll over his balance to an IRA [*Id.*, ¶¶ 12, 13]. Ms. Williams stated that the email represented the final decision of the plan administrator, but that plaintiff could appeal this decision to the Administrative Committee [*Id.*, ¶ 14].

Plaintiff appealed Ms. Williams's decision to the Administrative Committee on October 20, 2008 [*Id.*, ¶ 15]. Approximately one month later, the Administrative Committee denied plaintiff's request to roll over his pension balance into an IRA [*Id.*, ¶ 16]. Having exhausted his administrative remedies, plaintiff brought the instant suit on September 23, 2009 [*Id.*, ¶ 17]. Plaintiff filed his motion for judgment on the ERISA administrative record [Doc. 9] on April 20, 2010. Defendants filed their joint motion for judgment on the administrative record [Doc. 13] on May 20, 2010. Plaintiff filed a reply brief in support of his motion for judgment on the administrative record on July 29, 2010 [Doc. 20].

The Court has carefully considered the parties' filings in light of the administrative record and the applicable law. For the reasons that follow, plaintiff's motion for judgment on the ERISA administrative record will be denied. Defendants' joint motion for judgment

on the administrative record will be granted. This case will be dismissed. The Clerk will be directed to close this case.

## III. Conclusions of Law

The dispute between the parties in this case turns upon whether the Plan permits plaintiff to roll over his Plan balance into an IRA. Central to this dispute is the meaning of Section 9.4 of the Plan. Plaintiff argues that Section 9.4 permits him to roll his Plan balance into an IRA [*See* Doc. 9]. Defendants contend that such a rollover is no different than a lump sum distribution, which is not permitted by Section 9.4 or by any other section of the Plan [*See* Doc. 13].

The Court agrees with defendants. Section 9.4 of the Plan provides that "a Participant may elect, at the time and in the manner prescribed by the Plan Administrator . . . to have all or any portion of an eligible rollover distribution paid in a direct rollover directly to an eligible retirement plan specified by the Participant" [Doc. 9-1, p. 52]. Section 9.4 further provides that an "eligible rollover distribution" is:

> [Any] distribution of all or any portion of the balance to the credit of the Participant, except that an eligible rollover distribution does not include: (i) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Participant . . . .

[*Id.*].

Plaintiff receives his benefits in the form of a monthly annuity, which falls squarely within the definition of "any distribution that is one of series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the

6

Participant." Thus, because plaintiff's monthly annuity is not an "eligible rollover distribution" under Section 9.4 of the Plan, plaintiff is not entitled to have any or all of that distribution paid into an eligible retirement plan.

Plaintiff contends, however, that in order to qualify for tax purposes under 26 U.S.C. § 401(a)(31), the Plan must provide for a rollover option.[4] Plaintiff's argument is misplaced. As defendants correctly explain, while 26 U.S.C. § 401(a)(31) requires retirement plans to permit rollovers of any lump sum distribution authorized under the plan, § 401(a)(31) does not require that a retirement plan distribute benefits in a lump sum so that participants may elect a rollover [*See* Doc. 14, ¶ 12].[5] Because the Plan here does not permit lump sum distributions, § 401(a)(31) cannot supply plaintiff with the relief he seeks.[6]

---

[4] Referring to direct transfers of eligible rollover distributions, 26 U.S.C. § 401(a)(31) provides that:
> A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that if the distributee of any eligible rollover distribution (i) elects to have such distribution paid directly to an eligible retirement plan, and (ii) specifies the eligible retirement plan to which such distribution is to be paid (in such form and at such time as the plan administrator may prescribe), such distribution shall be made in the form of a direct trustee-to-trustee transfer to the eligible retirement plan so specified.

[5] As the Administrative Committee correctly explained, "[T]he purpose of § 9.4 (which is mandated by . . . § 401(a)(31) and is based upon model plan language developed by the IRS), is to provide participants [with] the option of rolling over any lump sum distribution permitted by the plan. Section 9.4 mandates the direct rollover option but does not mandate [that] every retirement plan permit lump sum distributions so that there can be a rollover" [Doc. 9-4].

[6] The parties note that the Plan did, at one time, provide for lump sum distributions of "small" benefits: Section 7.7 of the Plan once provided that "the lump sum Actuarial Equivalent of a Qualified Joint and Survivor Annuity . . . shall be immediately distributed . . . if . . . such amount is less than $5,000" [Doc. 10]. Amendment No. 8 to the Plan, however, provided that "[e]ffective as of March 28, 2005, all lump sum cash outs and the lump sum form of payment shall be eliminated" [*Id.*]. In any event, the distribution at issue in this case is well above the $5,000 limit in effect prior to March 28, 2005 [*See* Doc. 14].

Plaintiff also contends that defendants' decision to deny him a rollover "is arbitrary and capricious because it is motivated by a financial conflict of interest rather than a proper interpretation of the Plan language" [Doc. 10]. Plaintiff argues that, to the extent defendants explain that "their interpretation of the Plan is mandated by economic considerations and concerns for the financial solvency of the Plan," "that would be prima facie evidence that their decision on plaintiff's request was motivated by financial concerns and not by [defendants'] fiduciary duty to interpret the plain terms of the Plan in a fair and reasonable manner" [*Id.*]. Defendants argue that plaintiff "is wrong in asserting that a fiduciary of a pension plan has a conflict of interest if it takes into account the impact of a decision on the [P]lan's (as opposed to its own) funding" [Doc. 14].

The Court agrees with defendants. The ERISA statute contemplates that breaches of fiduciary duty injure the plan, rather than individual beneficiaries. *Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 608 (6th Cir. 2007); *see also Kuper v. Iovenko*, 66 F.3d 1447, 1452 (6th Cir. 1995) ("[T]his court has repeatedly held that ERISA does not permit recovery by an individual who claims a breach of fiduciary duty."). That is because a fiduciary's duty runs principally to the plan as a whole. See 29 U.S.C. § 1104(a)(1)(A)(i) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries. . . ."); *see also De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989) ("Fiduciaries are obligated to act not only in the best interests of beneficiaries, but with due regard for the preservation of trust assets."). To the extent defendants considered the effect

8

of granting plaintiff's rollover request on the Plan as a whole, the Court finds no error. The Court further finds such consideration to be an insufficient basis upon which to deem defendants' benefits determination arbitrary and capricious.

## IV. Conclusion

The Plan Administrator determined that plaintiff was not permitted to roll over his annuity payments into an IRA under the terms of the Plan, and explained this determination in writing [*See* Doc. 9-2]. The Administrative Committee affirmed this determination, and provided a written explanation of its decision [*See* Doc. 9-4]. All of this was in keeping with the terms of the Plan, to which plaintiff has consented.[7]

For all of these reasons, the Court finds that the determinations of the Plan Administrator and the Administrative Committee were not arbitrary and capricious. The Court will therefore deny plaintiff's motion for judgment on the ERISA administrative record [Doc. 9]. It will grant defendants' joint motion for judgment on the administrative record [Doc. 13]. This case will be dismissed. The Clerk will be directed to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[7] "An Employee, by becoming a Participant in the Plan, consents and agrees to all the terms and provisions of the Plan, the Insurance Contracts, the Trust Agreement, and any rules and regulations adopted by the Committee pursuant to the provisions of the Plan, as they may each be amended from time to time" [Doc. 9-1, p.72].